UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| ROBERTA M. HOLLINS, | ) ) | No. 4:07-CV-1638 (CEJ) |
| Plaintiff-Intervenor, | ) ) ) ) | |
| vs. | ) ) | |
| CON-WAY FREIGHT, INC., | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Con-Way Freight, Inc. (Con-Way) for summary judgment on the claims asserted by plaintiff Equal Employment Opportunity Commission (EEOC) and plaintiff-intervenor Roberta M. Hollins (Hollins). The EEOC and Hollins oppose Con-Way's motion, and the issues are fully briefed.

After an investigation and unsuccessful conciliation efforts, the EEOC filed this action against Con-Way on behalf of Hollins, an African-American woman, alleging that Con-Way discriminated against Hollins on the basis of race by failing to hire her for the part-time Customer Service Representative (CSR) position in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.* The Court then granted Hollins leave to intervene in this action. In her complaint, Hollins alleges that Con-Way discriminated against her on the basis of race in violation of Title VII; 42 U.S.C. § 1981; and the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.055.

Con-Way moves for summary judgment as to each claim asserted by the EEOC and Hollins.

## I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

## II. Background
### A. Con-Way's Hiring Policy

Con-Way is a trucking company engaged in the less-than-truckload shipment of freight in interstate commerce. In 2005, when a service center manager (SCM) wanted to increase his or her staff, the SCM discussed the matter with the regional manager (RM). If the RM agreed with the SCM's proposal, the RM then sought approval from the regional, vice president of operations (VPO) for the SCM to interview and hire individuals. If the VPO approved the RM's request, the SCM then interviewed individuals for the open positions. Every individual completed an application that, *inter alia*, asked: (1) "Have you ever been convicted of a crime? (this includes felonies, misdemeanors and plea bargains; omit traffic violations)" and (2) "If 'Yes,' please provide date, city/state, name of criminal charge(s) and details[.]" (Doc. #40-8, at 7).

After the SCM selected a candidate and the RM approved, the SCM then submitted a request to Robert Klinger (Klinger) to conduct a criminal background check (CBC) of the candidate. Klinger then requested the United States Imagery System (USIS)[1] to run a CBC on the applicant. In his deposition, Paul Frayer, a personnel manager (PM),[2] testified that Con-Way "asked [USIS] to [check the applicant's criminal history] as far [back] as they legally [could]." (Doc. #40-4, at 14). If the application and/or the CBC disclosed a theft-related conviction, such as stealing, burglary, robbery, fraud, and retail theft, the PM automatically disqualified the candidate. (Doc. ##40-4, at 7-8, 13; 40-10; 40-11). However, if the PM approved the candidate's CBC,

---

[1]"[T]he criminal background checks were run by DAC which is now known as USIS[.]" (Doc. #40-4, at 14). DAC is the acronym for "Drive-A-Check." See http://www.truthabouttrucking.com/dacreport/index.html (last visited on June 4, 2009).

[2]The PMs worked out of the corporate headquarters in Ann Arbor, Michigan. (Doc. ##39, at 13; 40-4, at 7)

the SCM extended a conditional offer of employment and instructed the candidate to undergo a drug test. (Doc. #52-18, at 14).

### B. Hollins Seeks Employment at Con-Way

On June 8, 2005, Kenneth Gaffney (Gaffney), the then-SCM, interviewed Hollins at Con-Way's Poplar Bluff, Missouri, facility. During this interview, Gaffney informed Hollins that he had submitted a request for approval to hire someone for a part-time CSR position, but that he had not yet received approval. Later that day, Hollins submitted an application for employment at the Poplar Bluff facility. On her application, Hollins answered "Yes" to the following question: "Have you ever been convicted of a crime? (this includes felonies, misdemeanors and plea bargains; omit traffic violations)[.]" (Doc. #40-8, at 7). Hollins also wrote that she had been convicted of two misdemeanor shoplifting charges in 1982 and 1984, and she signed the application, "certif[ying] that all entries on the application [were] true and complete to the best of [her] knowledge[.]" Id.

In June, July, or August 2005, Gaffney informed Kevin Beer (Beer), the RM[3] that he wanted to hire Hollins for a CSR position. Gaffney told Beer that Hollins was an African-American woman and that she was "the ideal candidate." (Doc. #44-11, at 122-23). In his deposition, Gaffney testified that Beer then stated that Gaffney would be "opening a can of worms" if he hired Hollins. Id. at 123. In late October or early November 2005, Gaffney received permission to interview applicants for a part-time CSR position. Gaffney then formally interviewed several individuals, including Hollins. (Doc. #44-5, at 3). Hollins testified in her deposition that, when she called to inquire

---

[3]Beer managed twelve service centers in Illinois and Missouri, including the Poplar Bluff facility. (Doc. #44-10, at 17).

about the status of her application, Gaffney offered her the CSR position. (Doc. #40-7, at 95-96).

In mid- to late-November 2005, Gaffney informed Beer that he had interviewed five to six good candidates, including Hollins and a male. (Doc. ##44-5, at 4; 40-7, at 95-96). With respect to Hollins, Beer testified in his deposition that Gaffney explained to him that he was concerned whether Hollins "would fit in at that location" because Poplar Bluff, Missouri, was a predominantly white area. (Doc. ##44-5, at 4; 44-10, at 110). After further consideration, Gaffney testified in his deposition that he selected Hollins and a white applicant, Angela Patterson (Patterson), as his top choices for the part-time CSR position. (Doc. #44-11, at 51-52). Thereafter, Gaffney asked Hollins and Patterson to take a drug test before he left town for his Thanksgiving vacation. (Doc. ##44-5, at 5; 52-10, at 3). In her declaration, Patterson states that Gaffney promised her "that if everything came out fine on the drug test, that it would be a 'done deal' and . . . 'without a doubt,' [she would] have the job." (Doc. #52-10, at 3).

When Gaffney returned to work on December 5 or 6, 2005, Con-Way terminated him.[4] (Doc. ##44-5, at 5; 52-19, at 19). In his deposition, Gaffney, testified that prior to his termination, he had not decided whether to submit either Hollins' or Patterson's applications for approval to hire. Thus, Gaffney had not received approval from Bruce Moss (Moss), the VPO, to extend conditional offers of employment. (Doc. #44-11, at 216). After Gaffney's termination, Hollins called the Poplar Bluff facility,

---

[4] Con-Way terminated Gaffney for "failing to report a threat made by a co-worker towards another co-worker to the Employee Relations Department, falsely telling an employee that he had reported the threat, and for violating a specific instruction during Con-way's investigation into the incident." (Doc. #44-5, at 5).

and Beer informed Hollins that Gaffney no longer worked for Con-Way and that there were currently no open positions. (Doc. #40-7, at 26).

On December 19, 2005, Gary Sellers (Sellers) became the new SCM for the Poplar Bluff facility. (Doc. #44-5, at 5). After receiving approval to hire a part-time CSR employee, in mid-January 2006, Sellers interviewed and hired Anthony Godwin (Godwin) for the position.[5] In his declaration, Godwin states that Gaffney had interviewed him in November 2005, and that Gaffney offered him the part-time CSR position during his interview. (Doc. #52-11, at 2). Prior to hiring Godwin, Sellers was unaware of Hollins's and Patterson's applications and "made no attempt to contact either Ms. Hollins or Ms. Patterson[.]" (Doc. #44-5, at 6-7).

Subsequently, Hollins filed a timely charge with the EEOC and the Missouri Commission on Human Rights (MCHR), alleging that Con-Way engaged in unlawful employment practices by refusing to hire her because of her race. On or about May 31, 2006, Con-Way mailed Hollins a letter, acknowledging Con-Way's receipt of her application, informing her that Con-Way currently had an open, part-time CSR position and inviting her to apply for this position. (Doc. #52-11, at 4). On October 12, 2007, the MCHR issued Hollins a Notice of Right to Sue. (Doc. #3-2).

### III. Discussion

The EEOC and Hollins contend that Con-Way discriminated against Hollins on the basis of race in violation of Title VII by failing to hire Hollins for the CSR position based on statements made by Beer and Gaffney. In her complaint, Hollins also asserts that Con-Way's failure to hire her constitutes race discrimination in violation of 42 U.S.C. §1981.

---

[5]A Con-Way employee encouraged Sellers to interview Godwin for the CSR position. (Doc. #44-5, at 6).

### A. Title VII and Section 1981 Claims

Title VII and § 1981 prohibit employment practices that discriminate against individuals based upon race. In the absence of direct evidence of discrimination, the Court analyzes Title VII and § 1981 claims under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gill v. Reorganized Sch. Dist. R-6, Festus, Mo., 32 F.3d 376, 378 (8th Cir. 1994).

### 1. Direct Evidence of Race Discrimination

The EEOC and Hollins argue that there is direct evidence of Con-Way's unlawful discrimination based on race that precludes summary judgment. "[D]irect evidence of discrimination is rare." Walton v. U.S. Dept. of Agric., et al., No. 4:02CV00163 AGF, 2007 WL 1246845, *17 (E.D. Mo. Apr. 30, 2007). The Eighth Circuit holds that:

> When relying on direct evidence to avoid summary judgment, the plaintiff must provide evidence:
>
> "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated[] the adverse employment action. Thus, 'direct' refers to the casual strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas analysis to get to the jury, regardless of whether his strong evidence is circumstantial."

King v. Hardesty, 517 F.3d 1049, 1057 (8th Cir. 2008) (emphasis added) (citing Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (citation and punctuation omitted)). The Eighth Circuit further states that, "[u]nder the mix-motives test established in Price Waterhouse, '[i]f there is direct evidence of [race] discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor.'" Hardesty, 517 F.3d at 1057, citing Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040,

1046 (8th Cir. 2005) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989)). A plaintiff must "produce[] direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Hardesty, 517 F.3d at 1057-58 (citation omitted). "At the summary judgment state, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment." Id. at 1058 (citing Griffith, 387 F.3d at 735 (emphasis in original)).

The Eighth Circuit holds that "direct evidence within the meaning of Price Waterhouse may include 'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' or comments 'uttered by individuals closely involved in employment decisions.'" Hardesty, 517 F.3d at 1058, citing Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (internal quotations and citations omitted). However, "[n]ot all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993). As such, "'[d]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.'" Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006), citing Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998) (quoting Price Waterhouse, 490 U.S. at 277).

In this case, the EEOC and Hollins assert that Beer's statement that Gaffney would be "opening up a can of worms" if Gaffney hired Hollins is direct evidence of race

discrimination. Gaffney testified in his deposition that Beer made this statement after he explained that Hollins was an African-American woman. Although Moss, the VPO, made the hiring decisions, Beer was closely involved in the decision-making process because he only submitted requests to hire applicants after he agreed with Gaffney's recommendation to hire certain applicants. As such, Beer's remark constitutes as "'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' [and] comments 'uttered by individuals closely involved in employment decisions.'" Hardesty, 517 F.3d at 1058.

Despite the discriminatory nature of Beer's statement, the record shows that his remark did not cause Gaffney not to consider Hollins for the part-time CSR position. In fact, after hearing Beer's discriminatory comment in June, July, or August of 2005, Gaffney (1) formally interviewed Hollins for the CSR position in November 2005; (2) considered Hollins as one of his top candidates for a part-time CSR position; and (3) instructed Hollins to undergo a drug test. Furthermore, the record shows that, before Con-Way terminated him, Gaffney had not decided whether to submit Hollins's name as his choice for the CSR position. When the new SCM, Sellers, interviewed and recommended Godwin for the CSR position, he was unaware of Hollins's application and Beer's statement. Based on the foregoing, the Court finds that the EEOC and Hollins have failed to show that Beer's comment was a motivating factor in Con-Way's decision not to hire Hollins. See Arraleh v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (holding that there was no direct evidence of discrimination because there was no specific link between the comment "that '[g]iving [the plaintiff] a job is like raising terrorist kids'" and the decision not to hire the plaintiff because, after hearing the discriminatory comment, the manager still considered the plaintiff's application); see

also Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003) (holding that race-neutral comments made many months before the employer terminated the plaintiff did not constitute direct evidence of race discrimination).

Likewise, the Court believes that Gaffney's statement to Beer that he was concerned whether Hollins, as an African-American, "would fit in at that location" does not constitute direct evidence of race discrimination. Similar to Beer, Gaffney had no authority to make hiring decisions, but he recommended applicants for Beer's and Moss's approval. In addition, Gaffney's statement constitutes as "'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' [and] 'comments 'uttered by individuals closely involved in employment decisions.'" Hardesty, 517 F.3d at 1058. However, Gaffney testified in his deposition that, after he made the discriminatory remark, he still considered Hollins as one of his top two candidates and instructed her to take a drug test. As discussed above, Sellers was unaware of Hollins's application when he interviewed and hired Godwin for the CSR position. Therefore, the Court finds that the EEOC and Hollins have not presented sufficient evidence that demonstrates that Gaffney's comment was a motivating factor in Con-Way's decision not to hire Hollins. As such, the Court believes that the EEOC and Hollins have failed to show that direct evidence of race discrimination.

### 2. Indirect Evidence of Race Discrimination

Because there is no direct evidence of race discrimination, the Court will follow the McDonnell Douglas burden-shifting analysis. Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802; Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). "A plaintiff establishes a *prima facie* case in a 'failure to hire' case when he proves that (1) he is

a member of a protected class; (2) he was qualified for the position for which the employer was accepting applications; (3) he was denied the position; and (4) the employer hired someone from outside the protected class." E.E.O.C. v Con-Way Freight, Inc., No. 4:07-CV-1638, 2008 WL 4066424, *2 (E.D. Mo. Aug. 27, 2008), citing Arraleh v. County of Ramsey, 461 F.3d at 975. If plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If defendant articulates such a reason, plaintiff must then demonstrate that defendant's reason is a pretext for discrimination. Id.; Kim, 123 F.3d at 1056.

Here, the parties do not dispute that Hollins is a member of a protected class, that she was denied the part-time CSR position, and that Con-Way hired someone outside the protected class. Rather, they disagree about whether the EEOC and Hollins satisfy the qualification element of the *prima facie* case. Con-Way maintains that it has a well-established policy of disqualifying applicants for any position if their applications and/or CBC's reveal theft-related convictions. However, the EEOC and Hollins question whether Con-Way has such policy because (1) Con-Way has failed to produce a written copy of its policy and (2) Gaffney's comment that Hollins did not have to worry about her two shoplifting misdemeanor convictions on her application because Con-Way "won't go back that far anyway." (Doc. #40-7, at 18; #44, at 16, 18).

In support of their first argument, the EEOC and Hollins cite to no Eighth Circuit authority mandating employers to produce written copies of their hiring policies in defense of race discrimination claims under Title VII and § 1981. As for the EEOC's and Hollins's second contention, the Court will not consider Gaffney's remark because it is inadmissible hearsay under Federal Rules of Evidence 801(d)(2)(D) and 602. The record contains undisputed evidence that Klinger and Con-Way's PMs, not Gaffney, had

sole responsibility for determining applicants' eligibility for employment if their applications and/or CBCs disclosed a conviction. As such, Gaffney's comment does not qualify as a party-admission under 801(d)(2)(D), Fed.R.Evid., because Gaffney's remark concerned matters outside the scope of Gaffney's employment. Likewise, Gaffney's statement is also inadmissible under Rule 602, Fed.R.Evid., because Gaffney admitted in his deposition that only Con-Way's corporate department handled an applicant's CBC, and that he was unaware of Con-Way's policy for applicants with criminal convictions; therefore, Gaffney lacked personal knowledge of Con-Way's policy for conducting a CBC. (Doc. # 44-11, at 55, 108). Contrary to the EEOC's and Hollins's assertions, the record contains undisputed evidence that Con-Way has a well-established policy of disqualifying applicants based on theft-related convictions. (Doc. ##40-5, at 8; 40-5, at 6-10). In fact, since June 2007, Con-Way has disqualified nearly thirty applicants based on theft-related convictions. Id.

Because it is undisputed that Hollins reported on her application that she had been convicted of two shoplifting misdemeanors, and that Con-Way disqualifies applicants who have been convicted of theft-related crimes, the Court believes that Hollins was not qualified for the part-time CSR position. Thus, the Court finds that the EEOC and Hollins have failed to establish a *prima facie* case of race discrimination, and that Con-Way is entitled to judgment as a matter of law on the EEOC's and Hollins's claims under Title VII and § 1981.

**B.    MHRA Claim**

As noted above, Hollins also alleges race discrimination in violation of the MHRA. Mo.Rev.Stat. § 213.055.1(1)(a) prohibits, *inter alia*, an employer from failing or refusing to hire based on an individual's race. Missouri law holds that:

> When determining whether an MHRA claim survives summary judgment, "a plaintiff has no higher standard to survive summary judgment than is required to submit to a jury." MAI 31.24 sets forth the factors for submission of an MHRA claim to a jury as follows:
>
> > Your verdict must be for plaintiff if you believe:
> >
> > First, defendant . . . <u>failed to hire</u> . . . plaintiff, and
> >
> > Second, . . . <u>one or more of the protected classifications supported by the evidence such as race</u> . . . <u>was a contributing factor</u> in such . . . <u>failure to hire</u> . . . and
> >
> > Third, as a direct result of such conduct, plaintiff sustained damage.

Lomax v. DaimlerChrysler Corp., 243 S.W.3d 474, 479-80 (Mo. Ct. App. 2007), citing MAI 31.24 (6th Ed. Supp.2007) (emphasis in original) (internal citation omitted). To determine whether an MHRA claim survives summary judgment, the Court does not invoke the McDonnell Douglas burden-shifting analysis; rather, the Court applies the "contributing factor" analysis set forth in Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 820 (Mo. 2007) (en banc); see also Al-Birekdar v. DaimlerChrysler Corp., No. 4:06CV1726-DJS, 2008 WL 341702, *3-4 (E.D. Mo. Feb. 5, 2008). Under the "contributing factor" standard, an MHRA claim "can survive summary judgment if there is a genuine issue of a material fact as to whether [race] was a 'contributing factor' in the [employer's adverse] decision." Daugherty, 231 S.W.3d at 820. The Court "must determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." Id., citing ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. 1993) (en banc).

In the instant case, the EEOC and Hollins contend that Con-Way's decision not to hire Hollins constitutes race discrimination. To support their argument, the EEOC and Hollins again rely on Beer's and Gaffney's statements. However, as discussed above,

these comments did not influence Gaffney's continued consideration of Hollins for the part-time CSR position. Gaffney didn't get the chance to hire or reject Hollins, because Con-Way fired him before he could make the decision. Moreover, without knowledge of Hollins's application or of Beer's and Gaffney's statements, Sellers interviewed and hired Godwin. Therefore, the Court finds that there are not two plausible but contradictory accounts of the essential facts, and that the EEOC's and Hollins's claims are merely argumentative, imaginary, or frivolous. The Court finds that Con-Way is entitled to judgment as a matter of law on Hollins's race discrimination claim under the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Con-Way Freight, Inc., for summary judgment on all claims asserted by plaintiff Equal Employment Opportunity Commission and plaintiff-intervenor Roberta M. Hollins [Doc. #39] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of June, 2009.